UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA **06 - 20650**

Case No. _____

**CIV-MORENO**

MAGISTRATE JUDGE
SIMONTON

ORLANDO HERNANDEZ,

        Plaintiff,

vs.

MERCK & CO., INC.,
CORINNE V. COLLINS SANTORO,
LARRY LABRADOR, ORLANDO LOLO,
MARK S. GALLO, CONSTANCE HARDING,
SHANNON LAYTON, WAYNE MESSAM,
LEIGH ROSENTHAL, KRISTIN C. SOSKINSKI ENSLEY,
CAREN L. TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

        Defendants.

_____/

## NOTICE OF REMOVAL OF DEFENDANT MERCK & CO., INC.

    Defendant, Merck & Co., Inc. ("Merck"), through undersigned counsel, hereby

removes the above-captioned action from the Circuit Court of the Eleventh Judicial

Circuit, in and for Miami-Dade County, Florida to the United States District Court for the

Southern District of Florida pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 and

respectfully files this Notice of Removal and states:

    1.    This action involves allegations regarding the prescription drug Vioxx®

("Vioxx"). On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an

order transferring 148 Vioxx products liability cases to the United States District Court

for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings

under 28 U.S.C. § 1407. Since that time, 3,256 additional actions have been transferred



to the Eastern District of Louisiana. Merck intends to seek the transfer of this action to

that Multidistrict Litigation, *In re VIOXX Products Liability Litigation,* MDL No. 1657,

and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along"

procedure in the MDL Rules.

       2.      On or about February 3, 2006, Orlando Hernandez ("Plaintiff")

commenced this action against Merck by filing a Complaint in the Circuit Court of the

Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, assigned Case Number

06-2444-CA-31.

       3.      As more fully set out below, this case is properly removed to this Court

pursuant to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for

removal and this Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332.

## I.     MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

       4.      Merck was served with a copy of Plaintiff's Complaint on February 23,

2006. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. §

1446(b).

       5.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and

orders served upon Merck are attached as composite Exhibit A.

       6.      Venue is proper in this Court pursuant to 28 U.S.C. § 89(c) because it is

the "district and division embracing the place where such action is pending." *See* 28

U.S.C. § 1441(a).

       7.      No previous application has been made for the relief requested herein.

8.      All of the properly joined and served Defendants consent to this removal.[1]

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is

being served upon Plaintiff and a copy is being filed with the Clerk of the Court for the

Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

## II.      REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

because this is a civil action in which the amount in controversy exceeds the sum of

$75,000, exclusive of costs and interest and is between citizens of different states.

### A.      The Amount In Controversy Requirement Is Satisfied

11.     It is apparent from the face of the Complaint that Plaintiff seeks recovery

of an amount in excess of $75,000, exclusive of costs and interests.[2]  *See* 28 U.S.C. §

1332.  Plaintiff alleges that he suffered a "myocardial infarction with significant

---

1. 28 U.S.C. § 1441(b) does not bar removal.  It is well-settled that co-defendants who are fraudulently joined need not join in the removal.  *See Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993); *Kimmons v. IMC Fertilizer, Inc.*, 844 F. Supp. 738, 740 (M.D. Fla. 1994).  Defendants Kristin Ensley (named as Kristin C. Sosinski Ensley) and John J. Galeota, Jr. are diverse.  *See* affidavits attached hereto as Exhibits B and C. Defendants Mark S. Gallo, Constance Harding, Larry Labrador, Orlando Lolo, Shannon Layton, Wayne Messam, Leigh Rosenthal, Corinne V. Collins Santoro, Caren L. Tasch, and Marybeth Taylor are fraudulently joined, *see infra* ¶¶ 20 - 25, and therefore, they need not consent to removal.  Moreover, Defendants Ensley, Galeota, Gallo, Labrador, Layton, Tasch and Taylor have not yet, to Merck's knowledge, been served and therefore the consent of these Defendants is not required at this time.

2. The Eleventh Circuit has made it clear that a federal court considering the appropriateness of removal is not limited to reviewing the allegations in the complaint. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 948 (11th Cir. 2000) (diversity jurisdiction); *Davis v. Cluet, Peabody & Co.*, 667 F.2d 1371, 1373 (11th Cir. 1982) (federal question jurisdiction).

complications resulting in permanent damages and disability as a result of his ingestion of Vioxx." (Compl. ¶ 3).  Plaintiff further alleges that he "[s]uffered serious personal injury, has sustained economic losses, and has expended (and/or may in the future be required to expend) fair and reasonable expenses for necessary health care, attention and services, and has and/or may incur incidental and related expenses." (Compl. ¶ 59). Plaintiff seeks unlimited, unspecified damages.  (Compl., ad damnum clauses for Counts I – IV.)

12.     Florida courts have consistently upheld substantial compensatory damage awards in products liability actions far in excess of $75,000.  *See, e.g., Jeep Corp. v. Walker*, 528 So. 2d 1203, 1204 (Fla. 4th DCA 1988) (upholding the $9.5 million compensatory damage award portion of a verdict in a products liability action). Moreover, federal district courts in Florida have also found that cases with similar allegations to the instant case satisfy the amount-in-controversy requirement.  *See Estevez-Gonzalez v. Kraft*, 606 F. Supp. 127, 128-29 (S.D. Fla. 1985) (holding that complaint alleging personal injury met amount-in-controversy threshold); *Baker v. Firestone Tire & Rubber Co.*, 537 F. Supp. 244, 246 (S.D. Fla. 1982) (holding that complaint alleging personal injuries in automobile accident met amount-in-controversy requirement.); *cf. Glaze v. M.R.A. Holding, LLC*, No. 2:03CV2221FTM29SPC, 2003 WL 21981978, at *2 (M.D. Fla. July 11, 2003) (denying remand where defendants "set forth the facts alleged in plaintiff's complaint which led [them] to believe the amount in controversy exceeded $75,000" and "cited other allegedly similar cases where the jurisdictional amount was satisfied").

13.     In addition, federal courts around the country have ruled that federal diversity jurisdiction exists in similar actions alleging personal injuries caused by Vioxx. *See, e.g.*, *Morgan v. Merck & Co., Inc.*, No. 3:03cv435WS (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co., Inc.*, No. L-03-134 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co., Inc.*, Civ. No. H-02-3139 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.*, No. 02-C-4203 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co., Inc.*, No. 02-0196 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186 (D. Haw. June 5, 2002).  These courts were all presented with complaints seeking actual damages for injuries caused by Vioxx and all found that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.  The same is true here.

**B.     <u>Complete Diversity Of Citizenship</u>**

14.     There is complete diversity as between Plaintiff and the only Defendant to even arguably be a proper party to this action - Merck.

15.     For purposes of diversity, a person is considered to be a citizen of the state in which he or she is domiciled. *See Britton v. Scott*, 1996 WL 608541 at *1 (S.D. Fla. 1996).  Plaintiff alleges that he is a resident of Miami-Dade County, Florida.  (Compl. ¶ 2.)  Plaintiff does not allege any alternative state of residence.  Accordingly, upon information and belief, Florida is the state in which Plaintiff is domiciled and, therefore, the state of which he is a citizen. *See Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001).

16.     Merck is, and was at the time Plaintiff commenced this action, a

corporation organized under the laws of the State of New Jersey with its principal place

of business at One Merck Drive, White House Station, New Jersey, and therefore, is a

citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

17.     Defendant Kristin Ensley (named as Kristin C. Sosinski Ensley) is, and

was at the time Plaintiff commenced this action, a resident and citizen of the State of

Georgia.  *See* Declaration of Susan J. Brunstetter, attached as Exhibit B.

18.     Defendant John J. Galeota, Jr. is, and was at the time Plaintiff commenced

this action, a resident and citizen of the State of New Jersey.  *See* Declaration of Susan J.

Brunstetter, attached as Exhibit C.

19.     For the reasons set forth below, Mark S. Gallo, Constance Harding, Larry

Labrador, Shannon Layton, Orlando Lolo, Wayne Messam, Leigh Rosenthal, Corinne V.

Collins Santoro, Caren L. Tasch and Marybeth Taylor (the "Employee Defendants"), all

alleged to be current or former Merck employees in the State of Florida (Compl. ¶ 9) and,

according to the last known addresses on file with Merck, all citizens of the State of

Florida, are fraudulently joined.  Therefore, their citizenship must be ignored for the

purpose of determining the propriety of removal.  *See, e.g., Tapscott v. MS Dealer

Service Corp.*, 77 F.3d 1353, 1359-1360 (11th Cir. 2000), *abrogated on other grounds*,

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000); *Kimmons v. IMC

Fertilizer, Inc.*, 844 F. Supp. 738, 739 (M.D. Fla. 1994).  The Complaint includes claims

for negligence (Count II), negligent misrepresentation (Count III) and fraud (Count IV)

"as to all Defendants."  However, for the reasons described below, there is no reasonable

basis for predicting that Plaintiff could prevail on any of these claims to the extent they are asserted against the Employee Defendants.

> **1.   Plaintiff Has Not Alleged Any Facts Which Provide A Reasonable Basis For Predicting That Liability Would Be Imposed On The Employee Defendants**

20.    A defendant is fraudulently joined when there is no "reasonable basis for predicting" that a state court might impose liability on the resident defendant. *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (recognizing that a "reasonable" basis to predict that plaintiff could prevail on the claims against an in-state defendant requires more than a "theoretical" possibility); *Kimmons*, 844 F. Supp. at 739. Such a "reasonable basis" must be based on facts in evidence and cannot be "merely theoretical." *Legg v. Wyeth,* 428 F.3d 1317, 1325 n. 5 (11th Cir. 2005). The Court must not, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)) (emphasis in original).

21.    Plaintiff makes no specific factual allegations regarding any actual conduct of the individual Defendants. Instead, Plaintiff makes only broad, collective and conclusory claims against "Defendants" and lumps each of the individual Defendants together and with Merck. (*See* Compl. ¶¶ 50, 51, 61 - 88.) Indeed, Plaintiff seems uncertain as to whether the individual Defendants or, for that matter, Merck, are responsible for the alleged fraudulent or intentional misrepresentations. Instead, Plaintiff alleges that "The fraudulent or intentional misrepresentations and/or active concealment

by the Defendants were perpetuated directly and/or indirectly by the Defendant and their employees, agents *and/or other detail persons*." (Compl. ¶ 82) (emphasis added). Such vague and uncertain assertions are not sufficient to state a factual basis for any claim against any or all of the Employee Defendants. *See, e.g., Tillman v. RI Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined "where plaintiff failed to tie these defendants to the underlying allegations of the complaint"); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 637-38 (S.D. Miss. 2002) (collective, conclusory and generic allegations of wrongdoing on the part of all defendants are insufficient to show that individual defendant was not fraudulently joined) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-93 (5th Cir. 2000)); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) ("*Rezulin II*") (pharmaceutical representatives fraudulently joined due to general collective allegations regarding "defendants"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

### 2.   Plaintiff Has Not Alleged Any Reasonable Legal Basis For Predicting That Liability Would Be Imposed On The Employee Defendants

22.   Furthermore, there is no reasonable basis to predict that Plaintiff will prevail on any of any of his claims against the Employee Defendants because Plaintiff has not allged, and cannot allege, that the individual Employee Defendants actually

personally participated in any wrongdoing. *See, e.g.*, *Stern v. Wyeth*, No. 02-80620-CIV-MARRA, at 6 (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where plaintiff failed to allege "personal involvement" by an employee defendant in the alleged tortious conduct of the corporate defendant employer); *Kimmons*, 844 F. Supp. at 740 (defendant fraudulently joined were no allegations of personal participation were made).

23.     Plaintiff's negligent misrepresentation and fraud claims are deficient because Plaintiff has not specifically alleged, and cannot allege, that the Employee Defendants, independently from Merck, made a misrepresentation to Plaintiff or his prescribing physician. *See* Declarations of Constance Harding, Wayne Messam, Orlando Lolo, and Leigh Rosenthal, attached, respectively, as Exhibits D, E, F and G. A claim for negligent misrepresentation and fraud requires, at a minimum, the identification of a particular statement alleged to be a misrepresentation. *See, e.g., Atlantic Nat. Bank of Florida v. Vest*, 480 So. 2d 1328, 1331 (Fla. 2d DCA 1985) (holding that in order to allege a viable cause of action for negligent misrepresentation, plaintiff must allege, among other things, that there was a misrepresentation of a material fact).

24.     Plaintiff's negligent misrepresentation and fraud claims are also deficient because Plaintiff has failed to plead the claims with the particularity required by the Florida Rules of Civil Procedure. *See* FLA. R. CIV. P. 1.120(b); *see also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against defendants violated Rule 9(b) and resulted in finding of fraudulent joinder); *Rezulin I*, 133 F. Supp. 2d at 183-84 (finding in-state defendants fraudulently joined due to plaintiff's failure to plead fraud claims with

particularity).  An order denying remand in another Vioxx case explains why Plaintiff's

claims in this case fail.  *See Hernandez v. Merck & Co., Inc., et. al*, Case No. 6:05-CV-

00221-ORL-31-KRS (Order dated May 3, 2005, denying plaintiffs' motion to remand

and dismissing two Merck sales representatives as defendants) (attached as Exhibit H).

Judge Presnell of the Middle District of Florida held that the claims against the sales

representatives in the *Hernandez* case were totally lacking in merit.  According to the

Court:

> Plaintiff has failed to allege what specific misrepresentations either Ortega
> or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain
> statements referred to in a warning letter to Merck were made to 'the
> plaintiff and/or plaintiff's prescribing physician' is clearly deficient.  Nor
> does the Plaintiff allege who made particular misrepresentations, when
> and where those misrepresentations were made, or how each
> misrepresentation was false or misleading.

*Id.* at 10 n.12; *see also Merced-Torres v. Merck & Co., Inc.*, Case No. 6:05-CV-449-

ORL-19DAB (Judge Fawsett's order denying plaintiffs' motion to remand) (attached as

Exhibit I).  Because Plaintiff's claims against the Employee Defendants suffer from the

same deficiencies as those in *Hernandez* and *Merced-Torres*, these claims must be

rejected as meritless by this Court.

25.    In short, because there is no reasonable basis for predicting that Plaintiff

could prevail on any of his claims against the Employee Defendants, their citizenship

should be ignored for the purpose of determining the propriety of removal, and this Court

therefore has diversity jurisdiction over this matter.

WHEREFORE, Defendant Merck respectfully removes the captioned action to this Court pursuant to 28 U.S.C. § 1441.

Dated: March 15, 2006.

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.
   INCLUDING
   STEEL HECTOR & DAVIS LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:    561.650.7200
Facsimile:    561.655.1509
E-mail:       CWhitfield@ssd.com

*Attorneys for Defendant Merck & Co., Inc.*

Patricia E. Lowry
Florida Bar No. 332569
John B.T. Murray, Jr.
Florida Bar No. 962759
Catherine Whitfield
Florida Bar No. 132391

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

U.S. Mail this 15th day of March, 2006 upon counsel for Plaintiff listed in the attached

Service List.

<u>**SERVICE LIST FOR HERNANDEZ v. MERCK & CO., INC., et al.**</u>

**(Removed from the Circuit Court of the Eleventh Judicial Circuit, in and for
Miami-Dade County, Florida, Circuit Court Case No. 06-02444 CA 31)**

<u>**Attorneys for Plaintiff:**</u>

Brenda S. Fulmer
C. Todd Alley
James D. Clark
Donald W. Greiwe
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Telephone:      813.222.0977
Facsimile:      813.224.0373

<u>**Attorneys for Defendants Merck & Co., Inc. and Leigh Rosenthal:**</u>

Patricia E. Lowry
John B.T. Murray, Jr.
Catherine Whitfield
SQUIRE, SANDERS & DEMPSEY, L.L.P.
        *Including*
        STEEL HECTOR & DAVIS LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:      561.650.7200
Facsimile:      561.655.1509

# EXHIBIT A

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, STATE OF FLORIDA**

ORLANDO HERNANDEZ,

      Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

      Defendants.

_____/

Case No.: 06-0 2     CA9  

Division: _____

## COMPLAINT

Plaintiff, ORLANDO HERNANDEZ, sues Defendants, MERCK & CO., INC.,
CORINNE V. COLLINS SANTORO, LARRY LABRADOR, ORLANDO LOLO, MARK S.
GALLO, CONSTANCE HARDING, SHANNON LAYTON, WAYNE MESSAM, LEIGH
ROSENTHAL, KRISTIN C. SOSINSKI ENSLEY, CAREN L. TASCH, MARYBETH
TAYLOR and JOHN J. GALEOTA, JR., and alleges as follows:

## GENERAL ALLEGATIONS

1.    This is an action for damages in excess of $15,000.00.

2.    Plaintiff, ORLANDO HERNANDEZ, at all times material hereto, was a resident
of Dade County, Florida.

M005734139

3.     On or about May of 2004, Plaintiff ORLANDO HERNANDEZ, suffered a myocardial infarction with significant complications resulting in permanent damages and disability as a result of his ingestion of Vioxx.

4.     This action arises out of the Defendant's manufacturing, selling, distributing, marketing and/or otherwise promoting Vioxx in the State of Florida without proper warnings as to the dangers associated with its use.

5.     The pharmaceutical drug Vioxx, manufactured by Defendant MERCK & CO., INC., is defective, dangerous to human health, and unfit and unsuitable to be marketed and sold in commerce.

6.     Defendant MERCK & CO., INC. (hereafter referred to as "MERCK") is a New Jersey Corporation with its principal place of business located in Whitehouse Station, New Jersey.

7.     At all times material hereto, MERCK was authorized and did conduct business within the State of Florida.

8.     At all times material, MERCK was in the business of developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx (rofecoxib) for consumer use by prescription. Defendant MERCK did develop, manufacture, design, package, market, sell and distribute Vioxx in the State of Florida at all times relevant to this action, but withdrew Vioxx from the market on September 29, 2004.

9.     Upon information and belief, Defendants, CORINNE V. COLLINS SANTORO, LARRY LABRADOR, ORLANDO LOLO, MARK S. GALLO, CONSTANCE HARDING, SHANNON LAYTON, WAYNE MESSAM, LEIGH ROSENTHAL, KRISTIN C. SOSINSKI ENSLEY, CAREN L. TASCH, MARYBETH TAYLOR and JOHN J. GALEOTA, JR., are

M005734140

currently or were in the past employed by MERCK as sales representatives, detail persons, or sales managers in the State of Florida to promote, market, sell, distribute and encourage physicians to prescribe Vioxx, and, in doing so, had an obligation to likewise warn prescribing physicians, including Plaintiff's prescribing physician, of the known and reasonably discoverable risks associated with the product Vioxx.

10.     Vioxx, a pain medication, is a Cox–2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

11.     Defendant MERCK submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for tablets at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

12.     Defendant MERCK also submitted a NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.  This application was denoted as NDA 21-052 by the FDA.

13.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereinafter the "NDA") for rofecoxib, for the relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

14.     At the time that Vioxx was approved by the FDA, the labeling for rofecoxib (in the section entitled "Special Studies- Upper Endoscopy in Patients with Osteoarthritis") stated "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower

3

M005734141

percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

15.     The "Warnings" section of the labeling for rofecoxib at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) effects—Risk of GI Ulceration, Bleeding and Perforation."

16.     Defendant MERCK submitted a Supplemental New Drug Application ("sNDA") with the goal of establishing a gastrointestinal safety claim for rofecoxib.  In conjunction with the sNDA, MERCK conducted a study known as the VIGOR (VIOXX GI Outcomes Research) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-09 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort."  The VIGOR study was conducted from January 6, 1999, through March 17, 2000.

17.     The objectives of the VIGOR study were to "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking Vioxx 50mg daily compared to patients in the group taking naproxen 1000 mg/day" and to "study the safety and tolerability" of Vioxx in patients with rheumatoid arthritis.

18.     The VIGOR study demonstrated that Vioxx is associated with a lower incidence of serious upper gastrointestinal adverse events of major bleeding, perforation, and obstruction compared to naproxen.

19.     However, the VIGOR study also showed a higher cumulative rate of serious cardiovascular thromboembolic adverse events (such as heart attacks, angina pectoris, and peripheral vascular events) in the Vioxx group compared to the naproxen group.

M005734142

20.    An FDA report, written by Shari L. Targum, M.D., a Project Manager for the FDA's Division of Anti-Inflammatory Drug Products, dated February 1, 2000, states: "By November 18, 1999, the Data and Safety Monitoring Board of the VIGOR study, a committee independent from MERCK, the sponsor, had become concerned over the "excess deaths and cardiovascular events experienced in Group A [Vioxx] compared to Group B [naproxen]."

21.    In June of 2000, in connection with industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which MERCK is a member and corporate sponsor, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke.  Not only did Defendant MERCK do nothing to accurately publish these studies, or warn consumers and prescribing doctors, MERCK also denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge from COX-2 Trials,* in August of 2000.

22.    Defendant concealed the serious cardiovascular risks associated with Vioxx because a successful launch of Vioxx was viewed as critical for the success of MERCK and safety concerns over hypertension, thrombosis, edema, and/or cardiovascular events would have drastically impacted MERCK's positioning in the market as compared to its competitor drug, Celebrex (celecoxib), which had been placed into the market by Pharmacia and Pfizer three months prior to the launch of Vioxx.

23.    Defendant continued to deny the ill health effects associated with Vioxx while at the same time reaping benefits obtained through its non-disclosure and concealment.  Defendant engaged in a massive physician and direct-to-consumer advertising and sampling program and

gained continued increases in the market share, which enhanced MERCK's financial stability to the detriment of its consumers.  As a result of MERCK's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and garnered approximately a 23% share of the market.

24.    The FDA sent a letter to MERCK dated December 16, 1999, stating that certain Vioxx promotional pieces "are false and misleading because they contain representations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

25.    On June 22, 1999, MERCK contracted with Peter Holt, M.D., to conduct Vioxx promotional audio conferences, using content provided by MERCK, which were to be presented to health care professionals as educational programs.

26.    Dr. Peter Holt conducted six Vioxx promotional audio conferences (one on June 8, 2000; one on June 13, 2000; one on June 16, 2000, and three on June 21, 2000), which were arranged by MERCK, presented on behalf of MERCK, and moderated by MERCK employees. Some of the content of these conferences was later found by the FDA to be "false or misleading in that they minimized the MI results of the VIGOR study, minimized the Vioxx/Coumadin drug interaction, omitted important risk information, made unsubstantiated superiority claims, and promoted Vioxx for unapproved uses and an unapproved dosing regimen."

27.    In response to the growing public expressions of concern over the cardiovascular safety profile of Vioxx, MERCK issued a press release entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx," dated May 22, 2001.  This press release states that Vioxx has a "favorable cardiovascular safety profile."  The FDA would later tell MERCK:

> Your claim in the press release that Vioxx has a "favorable cardiovascular profile" is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen. The implication that Vioxx's cardiovascular profile is superior to other NSAIDs is misleading; in fact, serious

M005734144

cardiovascular events were twice as frequent in the Vioxx treatment group...as in the naproxen treatment group... in the VIGOR study.

28.     Despite admonishments from the FDA for its fraudulent marketing, Defendant herein continued to increase sales of Vioxx and profits by withholding information from Plaintiff, prescribing doctors, the consuming public, and the health care industry. For example, in November of 2000, MERCK orchestrated the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

29.     On or about August 29, 2001, the Journal of American Medical Association (JAMA) published a peer reviewed epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, showing that MERCK had concealed the risk of  developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in MERCK's clinical trials, including VIGOR.  The study found a statistically increased risk (of the magnitude of a four to five-fold increase) for developing serious cardiovascular events, including heart attacks, in Vioxx users over placebo and naproxen.

30.     In the JAMA study, the authors stated that "by decreasing PG12 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PG12, potentially leading to an increase in thrombotic cardiovascular events."

31.     On September 17, 2001, Thomas W. Abrams, R. Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant MERCK, relating to "promotional activities and materials for the marketing of Vioxx (refecoxib) tablets."

7

M005734145

32.     The Warning Letter, MERCK's ***third*** such letter from the FDA concerning Vioxx,

stated that Defendant MERCK had "engaged in a promotional campaign for Vioxx that

minimizes the potentially serious cardiovascular findings that were observed in the Vioxx

Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile

for Vioxx." The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR
> study, patients on Vioxx were observed to have a four to five fold increase in
> myocardial infarctions (MIs) compared to patients on the comparator non-
> steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen).

33.     The eight-page Warning Letter outlines, in detail, the conduct of Defendant

MERCK that supports the FDA's issuance of the Warning Letter, and makes the following

"Conclusions and Requested Actions":

> The promotional activities and materials described above minimize the potentially
> serious cardiovascular findings that were observed in the VIGOR study, minimize
> the Vioxx/Coumadin drug interaction, omit crucial risk information associated
> with Vioxx therapy, contain unsubstantiated comparative claims, and promote
> unapproved uses. On December 16, 1999, we also objected to your dissemination
> of promotional materials for Vioxx that misrepresented Vioxx's safety profile,
> contained unsubstantiated comparative claims, and lacked fair balance.
>
> Due to the seriousness of these violations, and the fact that your violative
> promotion of Vioxx has continued despite our prior written notification regarding
> similar violations, we request that you provide a detailed response to the issues
> raised in this Warning Letter on or before October 1, 2001.
>
> This response should contain an action plan that includes a comprehensive plan to
> disseminate corrective messages about the issues discussed in this letter to the
> audiences that received these misleading messages. This corrective action plan
> should also include:
>
>> Immediately ceasing all violative promotional activities, and the
>> dissemination of all violative promotional materials for Vioxx.
>>
>> Issuing a "Dear Healthcare Provider" letter to correct false or
>> misleading impressions and information. The proposed letter
>> should be submitted to us for review prior to its release. After
>> agreement is reached on the content and audience, the letter should

M005734146

be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

34.     Defendant MERCK knew the warnings contained in the label were ineffective and used its sales force and other marketing efforts to downplay (rather to improve) its communication of the risks posed by Vioxx.  For example, in its 2001 annual report, MERCK states: "The Company also noted that a number of state and federal lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx....these lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events.  The Company believes that these lawsuits are without merit and will vigorously defend them."

35.     An article entitled "Why Do Cyclooxygenase-2 Inhibitors Cause Cardiovascular Events?' authored by Dr. Bing, Dr. Lomnicka, and others at the Department of Experimental Cardiology at the Huntington Medical Research Institute was published in the journal *Pharmacology* on February 6, 2002.  The authors explained that a selective Cox-2 inhibitor, such as Vioxx, can promote adverse cardiovascular events by tipping the balance of prostacyclin and thromboxane in favor of thromboxane.  This imbalance promotes both platelet aggregation and vasoconstriction, which can lead to catastrophic cardiovascular events, including stroke, heart attack, and pulmonary embolism.

36.     In response to a growing body of evidence of Vioxx's safety problems, Defendant attempted to obfuscate this negative information by authoring and sponsoring reviews that set forth the unsubstantiated claim that naproxen had a cardioprotective effect and therefore accounted for the cardiovascular risks among its Vioxx users.  However, this theory was debunked in January of 2002, by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study published in *The Lancet*.  The *Lancet* article concluded that

M005734147

there is an absence of a protective effect of naproxen or other non-aspirin, non-steroidal anti-inflammatory drugs on the risk of coronary heart disease.

37.     In approximately April 2002, MERCK was required to place cardiovascular warnings on its Vioxx labeling based on the results of the VIGOR study.   In addition, MERCK was required to place new label warnings relaying that Vioxx 50 mg per day is not recommended for chronic use.

38.     An article by Dr. Solomon and others at Harvard Medical School, entitled "Relationship between Selective Cyclooxygenase-2 Inhibitors and Acute Myocardial Infarction in Older Adults," was published in the April 2004 edition of the journal *Circulation*.   The Harvard authors concluded the following from their study:   "[R]ofecoxib [Vioxx] use was associated with an elevated relative risk of   AMI [acute myocardial infarction] compared with celecoxib [Celebrex] use and no NSAID use.   Dosages of rofecoxib [greater than] 25 mg were associated with a higher risk than dosages [less than or equal to] 25 mg."

39.     An article by H.K. Choi in the May 2004 edition of the *American Journal of Medicine*, entitled "Effects of Rofecoxib and Naproxen on Life Expectancy Among Patients with Rheumatoid Arthritis: A Decision Analysis," concludes the following:   "Our analysis suggests a longer life expectancy with naproxen than rofecoxib [Vioxx] ....except those at low risk for myocardial infarction or at a high risk for gastrointestinal toxicity."

40.     David Graham, M.D., an employee of the Food & Drug Administration, made a poster presentation entitled "Risk of Acute Myocardial Infarction and Sudden Cardiac Death with Use of COX-2 Selective and Non-Selective NSAIDs" at the 20th International Conference on Pharmacoepidemiology and Therapeutic Risk Management, held from August 22-25, 2004, in Bordeaux, France.   The data for the presentation was taken from a study done by Kaiser

M005734148

Permanente under a contract funded by the FDA, and concluded that Vioxx taken at more than 25 mg per day increased the risk of heart attack and sudden cardiac death by 300% in those enrolled in the Kaiser Permanente study.

41.    On August 26, 2004, Peter Kim, President of Merck Research Laboratories, issued a press release stating the following: "Merck strongly disagrees with the conclusions of an observational analysis by Graham, et al., presented at an international meeting this week . . . . Merck stands behind the efficacy and safety, including cardiovascular safety of Vioxx."

42.    On September 27, 2004, MERCK informed the FDA that the Data Safety Monitoring Board for an ongoing long-term study of Vioxx, known as the APPROVe study, had recommended that the study be stopped early for safety reasons.

43.    The APPROVe study was not intended to be a cardiovascular risk assessment study.   It was commissioned by MERCK to look at the effect of Vioxx on people at risk for developing recurrent colon polyps.

44.    The APPROVe study demonstrated an increased risk of cardiovascular adverse events, including heart attacks and strokes, for the Vioxx population relative to the placebo population in the study, particularly for people taking Vioxx for more than 18 months.

45.    MERCK representatives informed the FDA in a September 28, 2004, meeting that MERCK would withdraw Vioxx from the United States market.

46.    MERCK and the FDA each announced the withdrawal of Vioxx from the United States market on September 30, 2004.   MERCK also announced worldwide withdrawal on the same day.

11

47.     An FDA analysis, based on data from the Kaiser Permanente study, projects that 27,785 heart attacks and sudden cardiac deaths "would have been avoided" had Celebrex, another Cox II inhibitor, been used instead of Vioxx.

48.     Approximately 20 million people in the United States took Vioxx between its introduction in 1999 and its withdrawal in 2004, and, during this time period, Defendant engaged in a common scheme in marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as Plaintiff.

49.     At all times relevant to this litigation, Defendant MERCK enjoyed a significant market share based upon false claims of Vioxx's efficacy, safety, and superiority which resulted a result of the actions of Defendant, including a very aggressive marketing program which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program.     Defendant encouraged the prescription and use of Vioxx through aggressive marketing campaigns, including detailing of physicians by Defendant and others as well as direct-to-consumer advertising. As such, Defendant had a duty not only to provide Plaintiff's prescribing physician with adequate warnings but also to provide Plaintiff with adequate warnings regarding Vioxx and the safety risks associated with ingestion of the drug.

50.     Defendants misrepresented the safety and effectiveness of Vioxx to prescribing physicians, Plaintiff, and the consuming public, and concealed or understated the dangerous side effects associated with ingestion of Vioxx.

51.     As a direct and legal result of the defective condition of the Vioxx manufactured and marketed by Defendants and ingested by Plaintiff, Plaintiff has suffered and continues to suffer from serious injuries, including, but not limited to, pain and suffering, physical injuries,

M005734150

disability, disfigurement, embarrassment, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical, nursing care and treatment, loss of earnings, loss of the ability to earn money in the future, and a shortened life span.

**COUNT I**

**<u>STRICT LIABILITY (as to Defendant Merck only)</u>**

Plaintiff adopts by reference all of the General Allegations contained in Paragraphs 1 through 51 above, each inclusive, as though fully set forth herein, pursuant to Rule 1.130(b), Florida Rules of Civil Procedure.

52.    The Vioxx ingested by Plaintiff was defective and unreasonably dangerous when it left the possession of the Defendant in that:

a.    When placed in the stream of commerce, Vioxx contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting Plaintiff to risks which exceeded the benefits of the drug;

b.    When placed in the stream of commerce, Vioxx was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Plaintiff's ailment;

c.    Vioxx contained insufficient warnings to alert Plaintiff, consumers, and prescribing physicians of severe and life threatening complications and side effects including, but not limited to arterial thrombus;

d.    There was misleading advertising and promotion concerning the benefits of using Vioxx;

e.    There were inadequate post-marketing warnings or instructions for Vioxx because, after Defendant knew or should have known of the significant risks associated with the use of Vioxx, Defendant failed to provide adequate warnings to Plaintiff, consumers, and prescribing physicians, and continued to aggressively promote and advertise direct-to-consumers the sale and use of Vioxx; and

f.    The Vioxx ingested by Plaintiff had not been materially altered or modified prior to use.

13

M005734151

53.    Plaintiff used the drug for its intended purpose of pain management.

54.    Defendant MERCK, as a manufacturer of a prescription drug, is held to the level of knowledge of an expert in the field.

55.    Plaintiff's prescribing physician did not have substantially the same knowledge as MERCK, or that would have been gleaned from an adequate warning from Defendant.

56.    The warnings that were given by Defendant to prescribing physicians, consumers, and Plaintiff were not accurate, clear, and/or unambiguous.

57.    Defendant had a continuing duty to warn the Plaintiff, consumers and prescribing physicians of the dangerous risks and reactions associated with Vioxx.

58.    Plaintiff could not have discovered any defect in the product through the exercise of care.

59.    As a direct and legal result of the defective condition of Vioxx and inadequate warnings, Plaintiff suffered serious personal injury, has sustained economic losses, and has expended (and/or may in the future be required to expend) fair and reasonable expenses for necessary health care, attention and services, and has and/or may incur incidental and related expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, as well as costs of this action and a trial by jury of all issues to be tried.

## COUNT II

## NEGLIGENCE (as to all Defendants)

Plaintiff adopts by reference all the General Allegations contained in Paragraphs 1 through 51 above, each inclusive, as though fully set forth, pursuant to Rule 1.130 (b), Florida Rules of Civil Procedure.

M0057341S2

60.     At all times material hereto, Defendants had a duty to Plaintiff to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distribution and sale of Vioxx.

61.     Defendants were negligent in its actions, misrepresentations, and omissions toward Plaintiff and Plaintiff's prescribing physician in the following ways:

a.      They failed to include adequate warnings with the drug that would have alerted consumers and physicians to the potential risks and serious side effects of Vioxx; and

b.      Failed to adequately and properly test Vioxx before placing the drug on the market;

c.      Failed to provide adequate post-marketing warnings or instructions after the Defendants knew of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx;

d.      Failed to adequately warn Plaintiff that Vioxx should not be used in conjunction with any risk factors for these adverse effects such as family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease;

e.      Failed to adequately disclose and warn Plaintiff that Plaintiff undertook the risk of adverse events and death by ingesting Vioxx; and

f.      Failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion as described therein.

62.     Defendants knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which Plaintiff was unaware.   Defendants nevertheless aggressively advertised, marketed, sold and distributed Vioxx knowing that there were safer methods and products for treatment of pain due to inflammation.

63.     As a direct and legal result of the negligence of Defendants, Plaintiff suffered serious injury, and Plaintiff seeks all damages allowed under the law.

M005734153

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as costs of this action and a trial by jury of all issues to be tried.

## COUNT III

### NEGLIGENT MISREPRESENTATION (as to all Defendants)

Plaintiff adopts by reference all of the General Allegations contained Paragraphs 1 through 51 above, each inclusive, as though fully set forth, pursuant to Rule 1.130 (b), Florida Rules of Civil Procedure.

64.     Defendants negligently misrepresented to Plaintiff and Plaintiff's prescribing physician the safety and effectiveness of Vioxx and/or negligently misrepresented material information regarding Vioxx and/or negligently misrepresented adverse information regarding the safety and effectiveness of the drug Vioxx.

65.     Defendants negligent misrepresentations were communicated to Plaintiff's prescribing physician with the intent that they reach the Plaintiff, and that the effect of such representations would be that prescriptions would be written for Vioxx for the consuming public, including Plaintiff.

66.     Defendants misrepresented safety information regarding Vioxx with the intention and specific desire that Plaintiff, Plaintiff's prescribing physician or other dispensing entities, and the consuming public would rely on such information in selecting, requesting, or prescribing treatment.

67.     Defendants misrepresented material, adverse information regarding the safety and effectiveness of Vioxx.

68.     Defendants made these misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that Vioxx had defects,

16

M005734154

dangers, and characteristics that were other than what the Defendants had represented to prescribing doctors or other dispensing entities, the FDA and the consuming public, including the Plaintiff herein.

69.     The misrepresentations of the Defendants were perpetuated directly and/or indirectly by the Defendants' employees, agents and/or other detail persons.

70.     The misrepresentations of the Defendants constitute a continuing tort.

71.     Through the Vioxx product inserts, promotional materials, and aggressive marketing, Defendants continued to misrepresent the potential risks and benefits associated with Vioxx both before and after Plaintiff's ingestion of the drug.

72.     Defendants had a post-sale duty to warn Plaintiff, the consuming public, and prescribing physicians about the potential risks and complications associated with Vioxx in a timely manner.

73.     Defendants misrepresented the safety and efficacy of Vioxx in their labeling, advertising, product inserts, promotional materials, or other marketing efforts.

74.     Plaintiff, Plaintiff's prescribing physician, and other dispensing entities justifiably relied on and/or were induced by the misrepresentations of Defendants to Plaintiff's detriment.

75.     As a direct and legal result of the negligent misrepresentations of Defendants, Plaintiff has suffered serious injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

M005734155

## COUNT IV

### FRAUD (as to all Defendants)

Plaintiff adopts by reference all of the General Allegations contained Paragraphs 1 through 51 above, each inclusive, as though fully set forth, pursuant to Rule 1.130 (b), Florida Rules of Civil Procedure.

76.    Defendants fraudulently or intentionally misrepresented to Plaintiff and/or Plaintiff's prescribing physician the safety and effectiveness of Vioxx and/or fraudulently or intentionally concealed material information regarding the drug and/or fraudulently or intentionally misrepresented adverse information regarding the safety and effectiveness of Vioxx.

77.    Defendants fraudulent or intentional misrepresentations were communicated to Plaintiff's prescribing physician with the intent that they reach the Plaintiff.

78.    Defendants knew that their representations were false.

79.    Defendants made the fraudulent or intentional misrepresentations and/or actively concealed this information about the risks and efficacy of Vioxx with the intention and specific desire that the Plaintiff, the Plaintiff's prescribing physician, and/or dispensing entities and the consuming public would rely on such false information in selecting treatment for pain and inflammation.

80.    Defendants intentionally concealed material, adverse information regarding the safety and effectiveness of their products.

81.    Defendants made these fraudulent or intentional misrepresentations and actively concealed adverse information at a time when the Defendants knew that Vioxx had defects, dangers, and characteristics that were other than what the Defendants had represented to the

18

M005734156

prescribing doctors or other dispensing entities, the FDA and the consuming public, including the Plaintiff herein. Specifically, the Defendants fraudulently or intentionally misrepresented to and/or actively concealed from Plaintiff, Plaintiff's prescribing physician or other dispensing entities, the FDA and the consuming public the following adverse information regarding the Vioxx ingested by the Plaintiff:

    a.    Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that Vioxx carried risks of serious adverse effects;

    b.    Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that there were serious risks of thrombotic events associated with Vioxx, and, instead, Defendants aggressively marketed, promoted, advertised directly to consumers, and/or sold Vioxx as if there was no risk; and

    c.    Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that prior studies, research, reports and/or testing had been conducted linking Vioxx to serious adverse actions.

82.    The fraudulent or intentional misrepresentations and/or active concealment by the Defendants were perpetuated directly and/or indirectly by the Defendant and their employees, agents and/or other detail persons.

83.    The fraudulent or intentional misrepresentations and/or concealment by the Defendants constitute a continuing tort.

84.    Through the Defendants' product insert, promotional materials, and aggressive marketing efforts, Defendants continued to fraudulently or intentionally misrepresent the potential risks associated with Vioxx.

85.    Defendants had a post-sale duty to warn Plaintiff, consumers, and prescribing physicians of the risks of Vioxx in their labeling, advertising, product inserts, promotional materials, direct-to-consumer advertising, and other marketing efforts.

M00573415?

86.    Defendants fraudulently or intentionally misrepresented the safety and efficacy of Vioxx in their labeling, advertising, product insert, promotional materials, direct-to-consumer advertising, or other marketing efforts.

87.    Plaintiff, Plaintiff's prescribing physician, and other dispensing entities justifiably relied on and/or were induced by the fraudulent or intentional misrepresentations and/or active concealment of Defendants to Plaintiff's detriment.

88.    As a direct and legal result of the fraudulent or intentional misrepresentations of and/or active concealment by Defendants, Plaintiff suffered serious injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

### JURY TRIAL DEMANDED ON ALL ISSUES

Dated this the __3rd__ day of February, 2006.

_____

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

20

M005734158

*14*

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR DADE COUNTY, STATE OF FLORIDA

ORLANDO HERNANDEZ,
    Plaintiff,

                           Case No.: **06-02844 CA31**
                           Division: _____

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

    Defendants.

_____/

                                    02-23-06
                                   0955
                                   Sal Boq

## SUMMONS

THE STATE OF FLORIDA:
TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:
GREETINGS:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above styled cause upon the Defendant(s)

**MERCK & CO., INC.**
**c/o CT Corporation, Reg. Agent**
**1200 S. Pine Island Road**
**Plantation, FL 33324**

    Each Defendant is hereby required to serve written defenses to said Complaint or petition on Plaintiff's attorney, whose name and address is

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GRIEWE, Esq. (FBN: 218911)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Telephone: (813) 222-0977
Fax: (813) 224-0373

Attorneys for Plaintiff

within twenty (20) days after service of this Summons upon that Defendant exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and seal of said Court on _____FEB   8 2006_____, 2006.

Clerk of the Circuit Court

(Court Seal)

By:_____WANDA HOSKINS_____

Deputy Clerk

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

ORLANDO HERNANDEZ,

      Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

      Defendants.

_____/

## DECLARATION OF SUSAN J. BRUNSTETTER

I, Susan J. Brunstetter, declare as follows:

1.     My name is Susan J. Brunstetter. I am over twenty-one years of age and I have personal knowledge of the truth of the matters stated herein. If called upon to testify to facts set forth herein, I could and would do so truthfully and competently.

2.     I am a Senior Analyst ("Senior Analyst") in the Enterprise Systems and Services department of Merck & Co., Inc. ("Merck") and work in Merck's West Point, Pennsylvania office. In my capacity as Senior Analyst, I have direct personal knowledge of the records that Merck maintains in the regular course of its business.

1

3.      I have reviewed records that Merck maintains in the ordinary course of its business on current Professional Representative Kristin Ensley (named above as Kristin C. Sosinski Ensley).

4.      Those records indicate that Kristen Ensley has been employed as a Professional Representative in the State of Georgia since 1998, and that her home address has been recorded as Greensboro, Georgia since January 2001.

5.      Those records further indicate that Merck has never employed a Professional Representative in Florida named Kristen Ensley nor Kristen Sosinsky.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March _8_, 2006.

Susan J. Brunstetter

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

ORLANDO HERNANDEZ,

        Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

        Defendants.

_____/

## DECLARATION OF SUSAN J. BRUNSTETTER

I, Susan J. Brunstetter, declare as follows:

1.      My name is Susan J. Brunstetter.  I am over twenty-one years of age and I have personal knowledge of the truth of the matters stated herein.  If called upon to testify to facts set forth herein, I could and would do so truthfully and competently.

2.      I am a Senior Analyst ("Senior Analyst") in the Enterprise Systems and Services department of Merck & Co., Inc. ("Merck") and work in Merck's West Point, Pennsylvania office.  In my capacity as Senior Analyst, I have direct personal knowledge of the records that Merck maintains in the regular course of its business.

1

       3.      I have reviewed records that Merck maintains in the ordinary course of its business on current Vice President of Human Health Marketing James Galeota.

       4.      Those records indicate that James Galeota's home address is recorded as Metuchen, New Jersey.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

       Executed on March _8_, 2006.

_____
Susan J. Brunstetter

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

ORLANDO HERNANDEZ,

      Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

      Defendants.

_____/

## DECLARATION OF CONSTANCE HARDING

1.    My name is Constance Harding. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Orlando Hernandez.

3.    I am not a physician and accordingly have never prescribed Vioxx. While I have a degree in pharmacy, I am not a practicing pharmacist and I did not practice as a pharmacist during the time that I was employed by Merck, nor have I ever written or filled a prescription for Vioxx as a pharmacist at any time. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with

the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx.   I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed.   I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.     At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.   They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.   I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.     At no time did I ever sell, offer to sell, or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Orlando Hernandez.

6.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.     I have never met nor spoken with Orlando Hernandez.

2

8.     I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 23, 2006.

Constance Harding

3

** TOTAL PAGE.04 **

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

ORLANDO HERNANDEZ,

       Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

       Defendants.

_____/

## DECLARATION OF WAYNE MESSAM

1.     My name is Wayne Messam.  I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

2.     At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Orlando Hernandez.

3.     I am not a physician and accordingly have never prescribed Vioxx.  I am also not a pharmacist and I have therefore never filled a Vioxx prescription as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer.  Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx.  I had no involvement

in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.     At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.     At no time did I ever sell, offer to sell, or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Orlando Hernandez.

6.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.     I have never met nor spoken with Orlando Hernandez.

2

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 10 , 2006.

_____
Wayne Messam

3

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

ORLANDO HERNANDEZ,

        Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

        Defendants.

_____/

## DECLARATION OF ORLANDO LOLO

        1.    My name is Orlando Lolo. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

        2.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Orlando Hernandez.

        3.    I am not a physician and accordingly have never prescribed Vioxx. I am also not a pharmacist and I have therefore never filled a Vioxx prescription as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx. I had no involvement

in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4. At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5. At no time did I ever sell, offer to sell, or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Orlando Hernandez.

6. I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7. I have never met nor spoken with Orlando Hernandez.

2

8.     I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March _7_, 2006.

Orlando Lolo

3

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

ORLANDO HERNANDEZ,

        Plaintiff,

vs.

MERCK & CO., INC., CORINNE V.
COLLINS SANTORO, LARRY LABRADOR,
ORLANDO LOLO, MARK S. GALLO,
CONSTANCE HARDING, SHANNON LAYTON,
WAYNE MESSAM, LEIGH ROSENTHAL,
KRISTIN C. SOSINSKI ENSLEY, CAREN L.
TASCH, MARYBETH TAYLOR and
JOHN J. GALEOTA, JR.,

        Defendants.

_____/

## DECLARATION OF LEIGH ROSENTHAL

        1.    My name is Leigh Rosenthal.  I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

        2.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Orlando Hernandez.

        3.    I am not a physician and accordingly have never prescribed Vioxx.  I am also not a pharmacist and I have therefore never filled a Vioxx prescription as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer.  Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx.  I had no involvement

in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.   I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed.   I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.     At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.   They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.   I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.     At no time did I ever sell, offer to sell, or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Orlando Hernandez.

6.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.     I have never met nor spoken with Orlando Hernandez.

8.      I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 13, 2006.

_____
Leigh Rosenthal

3

# EXHIBIT H

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GLORIA HERNANDEZ,

　　　　　　　Plaintiff,

-vs-　　　　　　　　　　　　　　　　Case No.  6:05-cv-221-Orl-31KRS

MERCK & CO., INC., GENA ORTEGA
f/k/a Gena Ghazzi & JOHN E. (JACK)
KILKELLY,

　　　　　　　Defendants.

_____

## ORDER

This matter comes before the Court on the Plaintiff, Gloria Hernandez's ("Plaintiff")

Motion to Remand (Doc. 7) (the "Motion") and the Defendant, Merck & Co., Inc.'s ("Merck")

Memorandum of Law in Opposition thereto (Doc. 14).  The Plaintiff also filed a Notice of

Supplemental Authority (Doc. 17), to which Merck filed a Response (Doc. 18).  For the reasons

stated herein, the Plaintiff's Motion is denied.

I.　　Background

On January 12, 2005, the Plaintiff filed a Complaint (Doc. 3) against Merck, Gena Ortega

("Ortega"), and John Kilkelly ("Kilkelly") (collectively referred to, where appropriate, as the

"Defendants") in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida

alleging, *inter alia*, negligence, negligent misrepresentation, and fraud against all of the

Defendants.  In essence, the Plaintiff alleges that certain cardiovascular risks were associated with

the use of Vioxx, and that the Defendants knew or should have known of those risks.  The Plaintiff

further alleges that despite their knowledge, the Defendants promoted the use of Vioxx, and, in the course of promoting its use, concealed its dangerous qualities, misrepresented the risks associated with its use, and failed to warn prescribing physicians of those risks.

Merck removed the case to this Court on February 14, 2005,[1] alleging that the Plaintiff fraudulently joined Ortega and Kilkelly, that Ortega and Kilkelly are not proper defendants, and thus that this Court has diversity jurisdiction over this case.[2]

On February 15, 2005, the Plaintiff filed her Motion, arguing that the case should be remanded on the basis of offensive collateral estoppel arising from two decisions in this District granting remand in cases with different plaintiffs but the same Defendants, and, in the alternative, that Merck could not show that Ortega and Kilkelly were fraudulently joined.

Merck now asserts that offensive collateral estoppel does not apply to this case, and that it can prove fraudulent joinder, and thus seeks a denial of the Plaintiff's Motion.

II.    Legal Analysis

A. Offensive Collateral Estoppel

A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v.*

---

[1] Merck's Notice of Removal appears at Doc. 1.

[2] The Plaintiff is a resident of Orange County, Florida. Merck is a New Jersey corporation that is authorized to conduct business in Florida. At all times material to this case, Merck was engaged in the business of developing, manufacturing, selling and promoting Vioxx for consumer use by prescription. Ortega and Kilkelly are residents of the State of Florida. Ortega and Kilkelly were employed by Merck as sales representatives or managers to promote, and to encourage physicians to prescribe, Vioxx. It is thus clear that if Ortega and Kilkelly are proper defendants, this Court will not have diversity jurisdiction over this case under 28 U.S.C. § 1332.

*Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted).  The

offensive use of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant

from litigating an issue the defendant has previously litigated unsuccessfully in an action with

another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979).  Courts have

broad discretion in determining whether offensive collateral estoppel is appropriate.  *Id.* at 331;

*Cotton States*, 749 F.2d at 666.

        The issue here is whether to apply the doctrine of offensive collateral estoppel to orders

issued by courts in this District remanding under 28 U.S.C. section 1447(c) cases, similar to the

Plaintiff's, filed against these same Defendants.[3]  Courts are reluctant to apply doctrines of

preclusion where an issue is not reviewable on appeal.  *Warner/Elektra/Atlantic Corp. v. County of

DuPage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally

estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain

appellate review . . . does prevent preclusion").  It is clear that "[u]nder 28 U.S.C. § 1447(d), an

order remanding an action to state court pursuant to § 1447(c) is not reviewable on appeal or

otherwise, even if the remand order is clearly erroneous."[4]  *Poore v. American-Amicable Life Ins.

Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000); *see also Republic of Venezuela v. Philip Morris

Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).

_____

        [3] 28 U.S.C. § 1447(c) provides, in relevant part, that "[i]f at any time before final judgment
it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

        [4] 28 U.S.C. § 1447(d) provides, in relevant part, that "[a]n order remanding a case to the State
court from which it was removed is not reviewable on appeal or otherwise . . . ."

The orders upon which the Plaintiff seeks to rely to collaterally estop Merck are orders from courts in this District in the cases of *Kozic v. Merck & Co., Inc., Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:04-CV-324-T-27TBM ("*Kozic*"),[5] and *White v. Merck & Co., Inc., Gena Ortega f/k/a Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:05-CV-243-T-26MSS ("*White*"), which found that the plaintiff in those cases had not fraudulently joined Ortega and Kilkelly as defendants, and thus those courts remanded the cases to state court pursuant to 28 U.S.C. section 1447(c).[6] Therefore, because the Plaintiff seeks to collaterally estop Merck from asserting fraudulent joinder based on non-reviewable remand orders, offensive collateral estoppel is not appropriate, and Merck is entitled to assert its claim of fraudulent joinder before this Court.[7]

B. Fraudulent Joinder

Merck seeks to prevent the remand of this case to state court by alleging that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction. When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the

---

[5] Gena Ortega was formerly known as Gena Ghazzi. Doc. 3 at 1.

[6] Although neither order is specific as to the statutory basis for remand, in both cases the plaintiff moved for remand pursuant to 28 U.S.C. § 1447(c), and thus the Court assumes that each case was remanded pursuant to that section. *See Kozic*, Doc. 6 at 1; *White*, Doc. 9 at 1.

[7] Moreover, in both *Kozic* and *White*, Merck did not raise the issue, contained in the Declarations of Ortega and Kilkelly (Doc. 18 at Ex. A and B), that neither Ortega nor Kilkelly ever communicated with either the plaintiff or the plaintiff's prescribing physician. Therefore, the issue to be addressed here is not identical to the issue in *Kozic* and *White*, nor was that issue previously litigated, and thus collateral estoppel is not appropriate in this case.

-4-

resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).[8]
The burden on the removing party is a heavy one. *Id.* To determine whether the case should be
remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff,
and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.*; *see also*
*Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). These determinations are
made based on the plaintiff's pleadings at the time of removal. *Crowe*, 113 F.3d at 1538;
*Cabalceta*, 883 F.2d at 1561. In addition to the plaintiff's pleadings, the Court may consider
evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538;
*Cabalceta*, 883 F.2d at 1561.

The Court will not weigh the merits of the Plaintiff's claim, other than to determine
whether the Plaintiff has an arguable claim under state law. *Crowe*, 113 F.3d at 1538. "If there is
even a possibility that a state court would find that the complaint states a cause of action against
any one of the resident defendants, the federal court must find that joinder was proper and remand
the case to state court." *Id.* (internal citation and quotation omitted); *see also Triggs v. John*
*Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning
case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid
cause of action in order for the joinder to be legitimate.") (emphasis in original).

To determine whether the Plaintiff can establish a cause of action against either Ortega or
Kilkelly under Florida law, the Court examines the Complaint (Doc. 3). In Count II, the Plaintiff

---

[8] Merck asserts that the Plaintiff cannot establish a cause of action against Ortega and Kilkelly,
and does not raise the issue of fraudulently pled jurisdictional facts. Therefore, the second category
of fraudulent joinder as outlined in *Crowe* is not at issue here.

asserts a claim for negligence against the Defendants, claiming that the Defendants knew or should

have known of the risks associated with Vioxx, and despite that knowledge the Defendants

advertised, marketed, sold and distributed Vioxx, failed to adequately and accurately warn

prescribing physicians of the risks associated with Vioxx, and concealed the dangerous properties

of Vioxx. (Doc. 3 at 8-9). The Plaintiff asserts a claim for negligent misrepresentation against the

Defendants in Count III, claiming that the Defendants knew or should have known of the risks

associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and

distributed Vioxx, the Defendants misrepresented to the Plaintiff and to her prescribing physician

the safety and effectiveness of Vioxx, and the Defendants made these representations and

concealed adverse information despite their knowledge of the risks associated with Vioxx. (*Id.* at

10-11). In Count IV, the Plaintiff asserts a claim for fraud against the Defendants, claiming that

although the Defendants knew of the risks associated with Vioxx, the Defendants fraudulently or

intentionally misrepresented to the Plaintiff and to the Plaintiff's prescribing physician the safety

and effectiveness of Vioxx, and that the Defendants knew their representations were false. (*Id.* at

12-15).

　　　After filing a Memorandum in Opposition to Remand (Doc. 14), Merck filed a Supplement

in Support of Removal (Doc. 18), to which Merck attached sworn Declarations from Ortega and

Kilkelly. (Doc. 18, Ex. A and B, respectively). In those declarations, Ortega and Kilkelly swear to

several things, including: (1) each worked for Merck as a Professional Representative in the

Tampa, Florida District; (2) that district does not include either Orange County or Orlando; (3)

neither Ortega nor Kilkelly ever had any contact with Dr. Iraj Ghahreman Lou ("Dr. Lou");[9] (4)

neither Ortega nor Kilkelly ever supervised any other professional representative for Merck who

ever discussed Vioxx with Dr. Lou; and (5) neither Ortega nor Kilkelly ever spoke with the

Plaintiff about Vioxx. (*Id.*). The Plaintiff has not offered evidence in opposition to these

statements. The Court will therefore examine whether the Plaintiff can state a claim against

Ortega and/or Kilkelly in light of the information contained in their Declarations.

    *1. Negligence (Count II)*

    The elements for a negligence claim in Florida are duty, breach, harm, and proximate

cause. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). In the context of

claims against manufacturers arising from damages allegedly caused by the manufacturer's failure

to warn of the risks associated with prescription drugs, Florida follows the "learned intermediary"

doctrine, which means that the manufacturer's duty to warn of a drug's dangerous side effects is

directed to the prescribing physician rather than the patient. *Felix v. Hoffmann-LaRoche, Inc.*, 540

So. 2d 102, 104 (Fla. 1989); *see also Mitchell v. VLI Corp.*, 786 F. Supp. 966, 970 (M.D. Fla.

1992). In this case, then, any duty to warn of the alleged risks associated with Vioxx would have

flowed to Dr. Lou, the Plaintiff's prescribing physician. However, the Declarations of Ortega and

Kilkelly clearly show that neither of them, either directly or through representatives under their

supervision, communicated with Dr. Lou either in general or specifically about Vioxx. Thus,

neither Ortega nor Kilkelly had a duty to warn Dr. Lou, and in the absence of a duty, the Plaintiff

---

    [9] Merck identifies Dr. Lou as the Plaintiff's prescribing physician because Dr. Lou is the only
medical provider the Plaintiff identifies in her discovery requests. (Doc. 18 at 3, Ex. C). In her
pleadings and filings with this Court, the Plaintiff simply refers to a "prescribing physician," without
naming that individual.

cannot prove a claim for negligence.[10] *See Whitt v. Silverman*, 788 So. 2d 210, 221 (Fla. 2001) (duty is a threshold requirement).

    *2. Negligent Misrepresentation (Count III)*

    To prove negligent misrepresentation, a plaintiff must prove four elements: (1) the existence of a material misrepresentation; (2) that the representation was made under circumstances in which the representor either knew of the misrepresentation, was without knowledge as to its truth or falsity, or should have known of its falsity; (3) that the representor intended to induce reliance; and (4) the plaintiff justifiably relied on the defendant representor's representation to the plaintiff's detriment. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503-1505 (11th Cir. 1993); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985). Liability is limited to the loss suffered:

    (a) by the person or one of a limited group of persons for whose benefit and guidance [the representor] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [the representor] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Gilchrist Timber v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997) (*citing* Restatement (Second) of Torts § 552 (1977)). Returning to Ortega's and Kilkelly's Declarations, it is clear that neither of them communicated either directly with the Plaintiff or indirectly with her via communications to Dr. Lou. Therefore, Ortega and Kilkelly do not fall within the ambit of liability as prescribed by the Florida Supreme Court in *Gilchrist*, because neither the Plaintiff nor

---

    [10] Even if the "learned intermediary" doctrine did not apply, the Plaintiff would still be unable to prove that Ortega and Kilkelly owed her a duty, because their Declarations clearly establish that not only did they not communicate with Dr. Lou, but they never communicated directly with the Plaintiff.

Dr. Lou falls within the limited category of persons to whom Ortega and Kilkelly would be liable for misrepresentations, namely that "that limited group of persons for whose benefit and guidance [Ortega and Kilkelly] intend[ed] to supply the information or [knew] that the recipient intend[ed] to supply it." *Gilchrist*, 696 So.2d at 337. Thus the Plaintiff cannot prove a claim of negligent misrepresentation against either Ortega or Kilkelly.[11]

### 3. Fraud (Count IV)

To state a claim for fraudulent misrepresentation under Florida law, the plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Elders v. United Methodist Church*, 793 So. 2d 1038, 1042 (Fla. 3rd DCA 2001) (internal citation and quotation omitted). This claim must fail for the same reason as the Plaintiff's claim for negligent misrepresentation: Merck has offered undisputed evidence that neither Ortega nor Kilkelly communicated with either the Plaintiff or Dr. Lou, and in the absence of such communication, there can be no fraudulent misrepresentation.[12]

---

[11] The case of *Albertson v. Richardson-Merrell, Inc.*, 441 So. 2d 1146 (Fla. 4th DCA 1983), does not require a different conclusion. As described by that court, the decision in that case is squarely based on the circumstances where "[a] drug manufacturer's detail man makes representations to a physician caring for a pregnant woman." *Id.* at 1149. In *Albertson*, in direct contrast to the facts of the instant case, it was undisputed that the manufacturer's agent made representations to the plaintiff's physician.

[12] Alternatively, the Plaintiff has failed to state a claim for fraud against both Ortega and Kilkelly. Under Florida law, fraud must be pled with particularity. *Morgan v. W.R. Grace & Co.-Conn.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000); *Robertson v. PHF Life Ins. Co.*, 702 So. 2d 555, 556 (Fla. 1st DCA 1997). A plaintiff must particularly allege specific misrepresentations or omissions of fact, the time, place and manner in which the misrepresentations were made, and how those

-9-

After examining the Plaintiff's claims in light of the undisputed evidence Merck offered in the form of the sworn Declarations of Ortega and Kilkelly, the Court finds that the Plaintiff cannot state a claim for negligence, negligent misrepresentation or fraudulent misrepresentation against either Ortega or Kilkelly under Florida law. Therefore, Ortega and Kilkelly were fraudulently joined as defendants. *Kimmons v. IMC Fertilizer, Inc.*, 844 F. Supp. 738, 739 (M.D. Fla. 1994). Because the joinder of Ortega and Kilkelly was fraudulent, it does not defeat this Court's diversity jurisdiction. *Id.* Therefore, this case should not be remanded to state court. Moreover, because Ortega and Kilkelly were fraudulently joined, they should be dismissed as defendants. *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (it is appropriate for a federal court to dismiss . . . a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).

**III. Conclusion**

Because an order of remand is not an appealable order, Merck was not precluded from raising the issue of fraudulent joinder before this Court. The Plaintiff will not be able to prove her

---

misrepresentations were false or misleading. *Robertson*, 702 So. 2d at 556. The Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to "the plaintiff and/or plaintiff's prescribing physician" is clearly deficient. Nor does the Plaintiff allege who made particular misrepresentations, when and where those misrepresentations were made, or how each misrepresentation was false or misleading. Further, in light of the Ortega and Kilkelly Declarations, the Plaintiff will not be able to prove that such statements were made either to her or to her prescribing physician. Finally, the requirement that fraud be pled with particularity also applies to claims for negligent misrepresentation. *Morgan*, 779 So. 2d at 506. Based on the reasoning discussed above, the Plaintiff will not be able to prove a claim for negligent misrepresentation, and for this reason, in addition to the discussion in Section II(B)(2), *supra*, that claim must fail.

state law claims of negligence, negligent misrepresentation and fraudulent misrepresentation against either Ortega or Kilkelly, and therefore these individuals were fraudulently joined as defendants.  Therefore, Ortega and Kilkelly will be dismissed as defendants, and this case will not be remanded to state court.  Accordingly, it is

ORDERED THAT the Plaintiff's Motion for Remand (Doc. 7) is DENIED, and Ortega and Kilkelly are DISMISSED as defendants.

DONE and ORDERED in Chambers, Orlando, Florida on May 3, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

-11-

# EXHIBIT I

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CONCHITA MERCED-TORRES and CESAR
VIVES,

Plaintiffs,

-vs-                                                      Case No.  6:05-cv-449-Orl-19DAB

MERCK & CO., INC., GENA ORTEGA f/k/a
GENA GHAZZI, an individual, and JOHN E.
(JACK) KILKELLY, an individual

Defendants.

## ORDER

This case comes before the Court on the following:

1.   Plaintiffs Conchita Merced-Torres' and Cesar Vives' First Motion to Remand and
     Supporting Memorandum of Law. (Doc. No. 12, filed on April 4, 2005).

2.   Defendant Merck & Co., Inc.'s Memorandum in Opposition to Plaintiffs' First Motion
     to Remand.  (Doc. No. 23, filed on April 21, 2005).

3.   Defendant Merck & Co, Inc.'s Objections to the Magistrate Judge's Order Granting
     Plaintiffs' Motion to Shorten Time.  (Doc. No. 18, filed on April 8, 2005).

4.   Plaintiffs Conchita Merced-Tores' and Cesar Vives' Request that the Court rule on
     Defendant Merck & Co., Inc.'s Objections to the Magistrate Judge's Order Granting
     Plaintiffs' Motion to Shorten Time.  (Doc. No. 32, filed on May 6, 2005).

5.   Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Request that the Court rule on
     Defendants' Merck & Co., Inc.'s Objections to the Magistrate Judge's Order Granting

-1-

Plaintiffs' Motion to Shorten Time. (Doc. No. 33, filed on May 6, 2005).

### Background

On March 24, 2005, Defendant Merck & Co., Inc. ("Merck") filed a notice of removal of Plaintiffs' Conchita Merced-Tores' and Cesar Vives' suit from the Ninth Judicial Circuit in Orange County, Florida to the United States District Court for the Middle District of Florida. (Doc. No. 1, filed on March 24, 2005). In the notice, Merck argued that Plaintiffs had fraudulently joined Gena Ortega and John Kilkelly in their lawsuit in the Ninth Judicial Circuit and that complete diversity of citizenship existed between Plaintiffs and Merck.

In the complaint, Plaintiffs alleged six counts against Defendant Merck & Co., Inc. and four counts against Defendants Gena Ortega and John Kilkelly regarding Plaintiffs' ingestion of Vioxx, including strict liability against Merck, negligence, negligent misrepresentation, and fraud against all Defendants, a violation of the Florida Deceptive and Unfair Trade Practices Act against Merck, and loss of consortium against all Defendants. (Doc. No. 2, filed on March 24, 2005). Plaintiffs also alleged that Merck is a New Jersey corporation that was authorized to conduct business in Florida and that Ortega and Kilkelly are residents of Florida and sales representatives employed by Merck to promote market, sell, distribute, and encourage physicians to prescribe Vioxx. (*Id.* at ¶¶ 10, 14, 15).

On April 4, 2005, Plaintiffs filed their First Motion to Remand, arguing that collateral estoppel precludes Merck from removing this case to federal court, that Merck's contention that Plaintiffs' joinder of Ortega and Kilkelly was fraudulent is unsupported by the facts and case law, and that Plaintiffs had alleged sufficient facts to support claims against Ortega and Kilkelly. (Doc. No. 12). Plaintiffs also filed a Motion to Shorten Time requesting the Court to order Defendants to provide the identity of the Merck sales representatives responsible for soliciting Vioxx to Kissimmee, Florida

and/or Orange County, Florida and to provide the identity of the Merck sales representatives from 2001 to the present who were responsible for soliciting Dr. Olga Penerena and Dr. Cecilio Torres-Ruiz for Vioxx. (Doc. No. 13, filed on April 4, 2005).

In opposing Plaintiffs' First Motion to Remand, Defendants Ortega and Kilkelly filed declarations with the Court.[1] (Doc. No. 23, Ex. A, "Declaration of Gena Ortega") (Doc. No. 23, Ex. B, "Declaration of John Kilkelly"). In her declaration, Ortega testified that she had been employed by Merck as a professional representative, that she was responsible for making contacts with healthcare professionals in the Brandon/Tampa area regarding Vioxx, and that she never had any contact with Dr. Olga Penerena or Dr. Cecioilo Ruiz-Torres. (Doc. No. 23, Ex. A, ¶¶ 3, 5). Ortega further testified that she never supervised any other professional representative for Merck who had any discussions regarding Vioxx with either of these physicians and that she had never had a conversation with Plaintiffs concerning Vioxx. (Id. at ¶¶ 6, 7). In his declaration, Kilkelly similarly testified that he worked for Merck in the Tampa Florida District, that he never called any physician in Kissimmee Florida or supervised any professional representatives who had contact with health care professionals in Orange County, Florida or Kissimmee, Florida, that he never contacted Dr. Olga Penerena or Dr. Cecilio Ruis-Torres, and that he never spoke with Plaintiffs regarding Vioxx. (Doc. No. 23, Ex. B, ¶¶ 2, 5, 6, 9).

Plaintiffs have not countered the sworn declarations of Ortega and Kilkelly with evidence.

---

[1] While the declarations have not been notarized, Ortega's and Kilkelly's declarations are admissible as evidence because they meet the requirements of 28 U.S.C. section 1746. Under 28 U.S.C. section 1746, any matter that is required to be supported by a sworn declaration may, with like force and effect, be supported by an unsworn declaration, subscribed by the party, in writing, dated, and substantially attesting that the party declares under penalty of perjury that the foregoing is true and correct.

-3-

On April 7, 2005, the Magistrate Judge granted Plaintiffs' Motion to Shorten Time and ordered Merck to produce the identities of the Merck sales representatives sought in Plaintiffs' interrogatories as set forth in their motion by 5pm on April 8, 2005. (Doc. No. 16, filed on April 7, 2005).

Merck objected to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time. (Doc. No. 18, filed on April 8, 2005).

This Order analyzes Plaintiffs' Motion to Remand and Merck's Objections to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time.

### Standard of Review

The Constitution and Congress limit a federal court's jurisdiction by restricting the types of cases which the courts may hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, there is a strong presumption that state court jurisdiction is proper, and the statutory right of removal is to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.") (citations omitted). All doubts about jurisdiction should be resolved in favor of remand to state court. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citations omitted).

### Analysis

Plaintiffs argue that collateral estoppel precludes Merck from removing this case from state court to federal court because Merck has previously attempted and failed to defeat remand by claiming fraudulent joinder in claims involving Ortega, Kilkelly, and Merck. The orders upon which Plaintiffs seek to rely to collaterally estop Merck are orders from courts in this district, the Southern District of

-4-

Florida, and the Southern District of Illinois.

A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted). The offensive use of collateral estoppel occurs when the plaintiff seeks to preclude the defendant from litigating an issue that the defendant previously litigated in an action with another party. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Courts have broad discretion in determining whether offensive collateral estoppel is appropriate. *Id.* at 331.

Plaintiffs move to remand this case to state court pursuant to 28 U.S.C. section 1447(c).[2] Under 28 U.S.C. section 1447(d),[3] an order remanding an action to state court pursuant to section 1447(c) is not reviewable on appeal, even if the remand order is clearly erroneous. *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000). Offensive collateral estoppel is not appropriate in cases where an issue is not reviewable on appeal. *Warner/Elektra/Atlantic Corp. v. County of Dupage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain appellate review...does prevent preclusion"). Because the orders that Plaintiffs urge the Court to rely on to

---

[2] 28 U.S.C. section 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[3] 28 U.S.C. section 1447(d) states: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

-5-

collaterally estop Merck are not reviewable on appeal, the Court finds that the doctrine of offensive collateral estoppel is not applicable to this case.

Merck seeks to prevent remand of this case to state court by arguing that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction. When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The removing party bears a heavy burden in meeting these requirements. *Id.* To determine whether the case should be should be remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.; see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). In addition to the plaintiff's pleadings, the Court may consider evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561.

Plaintiffs alleged several claims against Ortega and Kilkelly which include negligence, negligent misrepresentation, fraud, and loss of consortium. Plaintiffs, however, have failed to counter the declarations of Ortega and Kilkelly with evidence. Because the declarations of Ortega and Kilkelly demonstrate that neither of them, either directly or through representatives under their supervision, communicated with Plaintiffs or Plaintiffs' physicians about Vioxx, Plaintiffs cannot establish a cause of action for negligence, negligent misrepresentation, fraud, or loss of consortium against Ortega or Kilkelly. Thus, Ortega and Kilkelly were fraudulently joined.

As for Plaintiffs' attempt to seek the identities of the representatives from Merck who are

-6-

connected to Plaintiffs' case, the Multi-District Litigation Panel will determine the identities of the representatives, and it is not necessary for Merck to produce this information at this time. Therefore, the Court sustains Merck's Objections to the Magistrate Judge's Order that Merck produce the identities of the sales representatives sought in Plaintiffs' interrogatories as set forth in their motion.

<u>Conclusion</u>

Based on the foregoing, the Court rules as follows:

1.  Plaintiffs Conchita Merced-Torres' and Cesar Vives' First Motion to Remand is DENIED. (Doc. No. 12).

2.  Defendant Merck & Co, Inc.'s Objections to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time are SUSTAINED. (Doc. No. 18).

DONE and ORDERED in Chambers in Orlando, Florida on May _____17th_____ 2005

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-7-

JS 44 (Rev. 11/05)

**CIVIL COVER SHEET**

# 06-20650

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## CIV-MORENO

**I. (a) PLAINTIFFS**

*ORLANDO HERNANDEZ*

**(b)** County of Residence of First Listed Plaintiff *MIAMI-DADE*
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*SEE ATTACHED*

*Apb 06 a 20650 / Moreno / Simonton*

**DEFENDANTS**

*MERCK & CO., INC., A FOREIGN CORPORATION [NEW JERSEY]*

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

## MAGISTRATE JUDGE SIMONTON

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

*SEE ATTACHED*

**(d)** Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☒ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page): a) Re-filed Case ☐ YES ☒ NO    b) Related Cases ☐ YES ☐ NO
JUDGE ___   DOCKET NUMBER ___

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): *SEE ATTACHED*

LENGTH OF TRIAL via *15* days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ *75,000+*    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
*Catherine Whitehead*

DATE *3/15/06*

FOR OFFICE USE ONLY
AMOUNT *250—*   RECEIPT # *936787*   IFP ___

## ATTACHMENT TO CIVIL COVER SHEET
## <u>HERNANDEZ v. MERCK & CO., INC.</u>

**(Removed from the Circuit Court in and for the Elventh Judicial Circuit
In and for Miami-Dade County, Florida, Circuit Court Case No. 06-2444-CA-31)**

**I(c) Plaintiff's Attorneys (Firm Name, Address, and Telephone Number)**

> Brenda S. Fulmer
> C. Todd Alley
> James D. Clark
> Donald W. Greiwe
> ALLEY, CLARK, GREIWE & FULMER
> 701 E. Washington Street
> P.O. Box 3127
> Tampa, FL 33601-3127
> Telephone:    813.222.0977
> Facsimile:    813.224.0373

> **I(c) Defendants Merck & Co., Inc.'s and Leigh Rosenthal 's Attorneys (Firm Name, Address and Telephone Number)**

> Patricia E. Lowry
> John B.T. Murray, Jr.
> Catherine Whitfield
> SQUIRE, SANDERS & DEMPSEY, L.L.P.
> > *Including*
> > STEEL HECTOR & DAVIS LLP
> 1900 Phillips Point West
> 777 South Flagler Drive
> West Palm Beach, FL 33401-6198
> Telephone:    561.650.7200
> Facsimile:    561.655.1509

## VII. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FLING AND WRITE BRIEF STATEMENT OF CAUSE.  DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

> 28 U.S.C. §§ 1332, 1441, and 1446

Plaintiff's Complaint asserts strict liability (Count I), negligence (Count II), negligent misrepresentation (Count III) and fraud (Count IV) claims based on allegations that Vioxx(r), a drug manufactured, marketed and distributed by Merck & Co., Inc, was defective and dangerous and allegedly caused Plaintiff's injuries.